## Evans, Assignee, v. Stilley.

*Judgment—Opening judgment—Equity powers.*

1. In passing upon a rule to open a judgment, the court may exercise its equity powers.

2. On a rule to open a judgment entered on a bond accompanying a mortgage, where it appears that the plaintiff had agreed to surrender his mortgage and accept another in its place, but instead had entered the judgment on the bond, thereby securing a prior lien to which he was not entitled, the court in disposing of the rule may exercise its equity powers by entering a decree directing the plaintiff to satisfy the judgment and the mortgage on the delivery to him of the new mortgage as provided by the agreemnt.

Rule to open judgment. C. P. No. 5, Phila. Co., Dec. T., 1925, No. 7536.

*Williams & Sinkler,* for rule; *John Connell* and *Garrett L. George,* contra.

MARTIN, P. J., Sept. 3, 1926.—J. Edmund Enich owned a lot of ground on the west side of Bryn Mawr Avenue, north of Wynnefield Avenue, in the City of Philadelphia. The property was encumbered by several mortgages.

Evans, Assignee, *v.* Stilley.

To provide capital for the erection of an apartment-house upon the land, it was necessary to borrow money on the security of the property.

Elias W. Evans held a bond and mortgage for $12,500, which was a junior lien upon the property subject to prior encumbrances. A plan to refinance the property involved creating mortgages amounting to $210,000; a first mortgage for $120,000 and $90,000 secured by mortgages subsequent in lien to the first mortgage. All these mortgages were to be insured by the Merion Title and Trust Company. Before issuing the policies of insurance the trust company caused all encumbrances prior in lien to the newly-created first mortgage of $120,000 and the second mortgages amounting to $90,000 to be satisfied, and received from Elias W. Evans, who held the mortgage of $12,500 secured on the property, a written promise that he would produce the bond and mortgage so that the company might arrange to satisfy it, he having agreed to accept a mortgage of $12,500 subject to the mortgages created for the purpose of refinancing the property for the erection of the apartment-house. This $12,500 mortgage was lost or mislaid, and, pursuant to his promise to have it satisfied, he signed a petition to be presented to the Court of Common Pleas praying for a decree directing the Recorder of Deeds to mark the record of the mortgage "satisfied." In reliance upon his promise to satisfy this mortgage, the Merion Title and Trust Company issued policies insuring the first and second mortgagees.

A misunderstanding having occurred between the officials of the Merion Title and Trust Company and Elias W. Evans as to the new mortgage to take the place of his $12,500 mortgage which he was to satisfy, he entered judgment upon the bond accompanying his $12,500 mortgage, and now holds an encumbrance upon the property prior in lien to the newly-created mortgages issued in pursuance of the plan to refinance the property.

A writ of *venditioni exponas* was issued on the judgment and the property exposed for sale.

Upon presentation of a petition by the Merion Title and Trust Company, the rule in this case was granted to show cause why the judgment should not be opened and the title company permitted to offer a defence.

Answers were filed by Elias W. Evans and depositions taken. The witnesses were examined in open court. It was not denied that Elias W. Evans wrote a letter addressed to the Merion Title and Trust Company in which he promised to produce the mortgage held by him to be satisfied, or that the Merion Title and Trust Company, relying upon this promise, issued policies insuring the title to the mortgagees who owned the newly-created mortgages. It was proved that Elias W. Evans in good faith signed a petition to be presented to the Court of Common Pleas praying for an order directing the Recorder of Deeds to satisfy the mortgage, and that the judgment was entered by him under the belief that he would be unable to obtain a new mortgage in place of the one he held.

The case in its present form is before the law side of the court, but it is within the power of the court to administer equitable remedies.

In the case of Myers et al., Exec'rs, *v.* S. Bethlehem, 149 Pa. 85-89, it was said by Mr. Justice Mitchell: "When the early judges of Pennsylvania took the most brilliant and important step in the history of modern jurisprudence and held, a century in advance of England and our sister states, not only that equity was part of the common law of Pennsylvania, but also that it might be administered by the common law tribunals under common law forms, they might well have supposed that the conflict, as old as the days of Coke

and Ellesmere, over the right of equity to control proceedings at law, would thenceforth disappear."

In Given's Appeal, 121 Pa. 260-262, a bill in equity was filed praying that judgment entered upon a bond be declared illegal and void and stricken off, and that the plaintiff in the judgment be restrained from proceeding thereon. A demurrer was filed alleging, among other causes, that the plaintiff had a complete remedy at law in the case where the judgment was entered. In the opinion of the lower court it was said: "While it is true that a rule to open a judgment, devised at the time when we had no court of equity, is a substitute for a bill in equity, and is conducted upon equitable principles, yet it does not follow, since the courts have equity powers to be enforced according to the forms and procedure in equity, that a bill in equity is a substitute for a rule to open the judgment, so as to supersede or displace the procedure by rule, in cases in which ample relief may be had by that method. There are many and substantial reasons for this. The remedy by rule on the law side of the court is adequate; it is more expeditious; it preserves the right of trial by jury, and is less expensive and burdensome. . . . In Banning v. Taylor, 24 Pa. 291; Hutchinson v. Ledlie, 36 Pa. 112, it is said that the courts have the power to open or set aside judgments entered by warrant of attorney, and that they may do so upon cause appearing on the record, and also for causes that may be made to appear by evidence. So that it is plain that, both at common law and under the statute, the power of the courts over judgments entered by warrant of attorney is ample."

"Formerly it was done by *audita querela*, but in recent practice by a motion in the court wherein the judgment is recovered or by bill in equity. But where the plaintiff has had a trial, or an opportunity for a trial, in a court of law, equity will not interfere either to correct the slips or the laches of the party complaining:" Paxson, J., in Hetzell v. Bentz et al., 8 Phila. 261, 263.

In Knarr v. Elgren, 19 W. N. C. 531, 533, the Supreme Court referred to the Act of April 4, 1877, which provided for appeals upon the decisions of lower courts in applications for the opening of judgments entered by virtue of warrants of attorney: "Prior to the enactment of this useful statute, the defendant who applied to have such judgment opened was compelled to submit to the decision of the Court of Common Pleas as final when entered against him, unless he resorted to a formal bill and proceeding in equity, which was the only practical remedy for relief from an unjust judgment. In either form of procedure the relief demanded is in equity, and the applicant or complainant must make a case which would justify a chancellor in entering the decree."

In Gordinier's Appeal, 89 Pa. 528, in an action of ejectment, by the terms of the verdict defendant was to hold the land upon conditions with which he failed to comply. Judgment was entered in favor of plaintiff and a writ of *habere facias possessionem* issued. A rule was granted to show cause why plaintiff should not be enjoined from issuing the writ, which was discharged. The defendant afterwards filed a bill in equity to enjoin plaintiff from proceeding with the writ, alleging the same grounds as those presented in support of the rule to show cause. It was held that the question was *res adjudicata*, and the injunction prayed for in the bill was refused. In the opinion of the lower court, which was approved by the Supreme Court, it was said: "When Andrew Gordinier filed his affidavit and moved for a rule to show cause why the plaintiff should not be enjoined from issuing a *habere facias possessionem*, he appealed to the equity powers of the court and he prayed for the same measure of relief that he asks for now. It is true he did not proceed by bill, but he did proceed in a form in common practice, and the court, at that time

and in that form, had as ample power to do equity as we have now. . . . In these cases we grant relief much more simply and beautifully on motion by 'the court laying its hands upon the action and preventing its execution, if in equity the party is entitled to relief.' "

It is clear that the Court of Common Pleas in which the judgment in the instant case was entered has ample power to restrain an illegal use. It stands upon the record a first lien ahead of the first and second mortgages created upon the faith that the mortgage would be satisfied.

The prayer of the petition in the instant case prays for a rule to open the judgment, but the court has jurisdiction of the parties and of the subject-matter, and may enter a decree which will afford equitable relief in the premises.

And now, Sept. 3, 1926, it is ordered and decreed that the Merion Title and Trust Company cause to be executed a bond and mortgage in favor of Elias W. Evans in the sum of $12,500, secured upon the lot of ground, with buildings thereon, situated on the west side of Bryn Mawr Avenue, 387.247 feet north of Wynnefield Avenue, in the 34th Ward of the City of Philadelphia, to be recorded subject only to the lien of a first mortgage of $120,000 and second mortgages of $90,000 now secured upon the property, and that the Merion Title and Trust Company pay to Elias W. Evans all interest in arrears upon the mortgage now held by him for $12,500, together with the costs of satisfaction of said mortgage, and that Elias W. Evans, upon delivery to him of the newly-created bond and mortgage for $12,500, satisfy of record the outstanding mortgage of $12,500, and mark the judgment entered upon the bond satisfied; and that the Merion Title and Trust Company pay the costs in this judgment.